Frank MICELLI, Plaintiff,

v.

Eugene S. LeFEVRE, Supt. of Clinton
Correctional Facility, Defendant.

No. 77 Civ. 1232 (HFW).

United States District Court,
S. D. New York.

Jan. 25, 1978.

Frank Micelli, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; Emanuel M. Kay, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (1970) by Frank Micelli, an inmate at the Clinton Correctional Facility in Dannemora, New York, who is presently serving a term of imprisonment imposed following entry of a plea of guilty. Micelli raises two contentions in his petition. He argues, first, that the sentencing judge exceeded the bounds of due process by taking into consideration matters going beyond the single count to which he entered a negotiated plea; second, that the State acted unconstitutionally in refusing to allow him an appeal from the judgment of conviction (based upon his conceded failure to file a notice of appeal within the required time). For the reasons stated below, I hold that both of these claims are without merit.

## BACKGROUND

In August of 1974, Micelli was charged in a seven-count indictment with, among other things, having attempted to murder Emilio Santana and Geraldine Medori on or about August 2, 1974. Subsequently, Micelli was also charged with bail jumping after having failed to report as required to the Criminal Court of the City of New York on August 7, 1974. Herbert Adlerberg, Esq. was appointed to represent Micelli, and in accordance with Mr. Adlerberg's advice on December 5, 1975 Micelli pleaded guilty to Count Five of the initial indictment in exchange for the dismissal of all remaining charges against him. Count Five charged Micelli with Assault in the First Degree, a Class C felony punishable by an indeterminate sentence with a maximum term of fifteen years. N.Y. Penal Law §§ 70.00, 120.10 (McKinney 1975).

Micelli was sentenced to a term of eight years on January 8, 1975. Just before pronouncing sentence, the sentencing judge, Criminal Court Judge Irving Lang, observed without objection from counsel that Micelli had "shot two people in this case."

Micelli alleges that when Judge Lang made this comment he "hastened to have his counsel seek a clarification with the Court, which counsel did not do." Micelli further alleges that he signed a "prepared" notice of appeal "immediately following the imposition of sentence," although the sentencing minutes provided this court reflect no more than that he was advised at that time of his right to bring an appeal.

Micelli did not submit a formal notice of appeal to the Appellate Division, First Department, until April of 1976, some fifteen months after he was sentenced. It is not disputed that by that time it was plainly untimely. Micelli says that he did not file the notice at an earlier time because he mistakenly thought that his attorney had already done so. He does not allege, however, that he ever asked his attorney to file a notice of appeal on his behalf and Mr. Adlerberg has submitted an affidavit in which he states that he was never requested to do so. Mr. Adlerberg adds that had such a request been made, a notice of appeal would have been filed with the Appellate Division.

There is nevertheless some suggestion in the record that Micelli thought an appeal was pending. Specifically, in November of 1975, and again in February of 1976, Micelli submitted to the Appellate Division affidavits for leave to proceed *in forma pauperis* and for the appointment of counsel. Micelli also alleges that he wrote a letter of inquiry to the Clerk of the Appellate Division after receiving no response to his applications, that in March of 1976 he learned for the first time from the Appellate Division Clerk that no notice of appeal had been filed and that he therefore submitted a notice of appeal in April of 1976, accompanied by an affidavit setting forth the facts which he felt excused the lengthy delay. That notice of appeal was rejected by order of the Appellate Division dated May 13, 1976.

Thereafter, Micelli pursued two alternative avenues to an appeal from his conviction and sentence. First, on June 29, 1976, he filed a motion to be resentenced pursuant to *People v. Montgomery*, 24 N.Y.2d 130, 299 N.Y.S.2d 156, 247 N.E.2d 130 (1969). In *Montgomery*, the Court of Appeals held that a defendant "should be resentenced so that his time to appeal will run anew" if he is able to establish that his failure to appeal resulted from omissions by his counsel. 24 N.Y.2d at 134, 299 N.Y.S.2d at 161, 247 N.E.2d at 133. Judge Lang denied Micelli's *Montgomery* motion in September of 1976, finding that he had demonstrated neither that his failure to appeal was attributable to the actions of his counsel, nor that he had a viable appellate issue. Second, Micelli moved pursuant to N.Y. Crim.Proc.L. ("CPL") § 460.30 (McKinney 1971) for an extension of time within which to take an appeal. That motion was denied by the Appellate Division "without prejudice to an application for *Montgomery* relief"—the court evidently having been unaware that Micelli had made an earlier *Montgomery* application to Judge Lang.

## DISCUSSION

It is the contention of the State that Micelli cannot bring his petition before this court because he has failed to exhaust available remedies and because he has deliberately waived the opportunity to present his federal claims to a state tribunal. Neither of these asserted grounds has merit.

A petitioner is deemed not to have exhausted state remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). However, Micelli no longer has an appeal available from the denial of his *Montgomery* motion since no certificate granting leave to appeal that decision was sought within the required time. CPL § 450.15 (McKinney 1971); Rules of the Appellate Division, First Department, § 600.8(d)(1) (McKinney 1976). And an appeal from the Appellate Division's order denying an extension of time within which to file a notice of appeal is also unavailable for the same reason. CPL §§ 460.10(5)(a) and 460.20 (McKinney 1971). Although Micelli could conceivably have attempted to appeal from the denial of his *Montgomery* motion, comity would

not be advanced by requiring such an action inasmuch as the Appellate Division had already had an opportunity to consider his papers in support of an extension of time for an appeal. Consequently, since Micelli's federal contentions have already "been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Further, this is not a case in which there has been a deliberate attempt to bypass the state judiciary. *See, e. g., Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Indeed as has been noted Micelli made more than one attempt to present his arguments to the Appellate Division on direct review. If the state courts did not consider Micelli's federal contentions, it cannot be said with any degree of certainty that this occurred "due to [Micelli's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, 45 U.S.L.W. 4807, 4812 (1977). Rather, Micelli's failure to raise his objections at the time of sentence or on appeal results not from any conscious determination on his part, but from the conduct (or inaction) of his appointed counsel—if his factual assertions are accepted.

 Turning to Micelli's contention that he should have been permitted to appeal, or at least should have been granted a hearing on his allegation that he failed to file a timely notice because of his attorney's misrepresentations, *Montgomery* is of course the basis upon which such a claim would be made in state court. In that case, the New York Court of Appeals observed that:

> every defendant has a fundamental right to appeal his conviction and that, accordingly, basic fairness and due process required that the right not be dissipated either because the defendant was unaware of its existence *or counsel failed to abide by a promise to either file or prosecute an appeal.*

*People v. Montgomery*, 24 N.Y.2d at 132, 299 N.Y.S.2d at 159, 247 N.E.2d 130, 132 (emphasis added). Where a criminal defendant has entered a plea of guilty, however, the New York courts have held that it is not enough for him to allege, as Micelli does here, that no appeal was taken because counsel failed to file a timely notice. Rather, "in such a situation it must appear that during the time allowed for taking an appeal, the defendant disputed the validity of the judgment of conviction but . . . was prevented from prosecuting an appeal." *People v. Lynn*, 28 N.Y.2d 196, 203, 321 N.Y.S.2d 74, 80, 269 N.E.2d 794, 798 (1971). The defendant "must also show that at that time he had a genuine appealable issue" which might have been raised. *Id.*, at 204–05, 321 N.Y.S.2d at 81, 269 N.E.2d at 799; *accord, People v. Melton*, 35 N.Y.2d 327, 361 N.Y.S.2d 877, 320 N.E.2d 622 (1974). Clearly, Micelli has not met this test. In the first place, there is no evidence that he ever displayed any intent to prosecute an appeal within the required period of time, his initial application for leave to proceed on appeal as a poor person and for the appointment of counsel having only been submitted to the Appellate Division some ten months after sentence was imposed. Micelli states that this delay is explained, in part, by his assigned counsel's failure to respond to "certified letters, phone calls, and other correspondence," but he has not produced any evidence that he ever wrote to his attorney within the time period for filing a notice of appeal. Moreover, even if it is assumed, *arguendo*, that he did send counsel a timely letter evidencing an intention to appeal, it is clear that the New York courts would have denied him an appeal for want of a genuine appealable issue. The crux of Micelli's applications to the State courts is that Judge Lang wrongfully sentenced him for having shot two persons. While it is of course true that Micelli's negotiated plea did not establish that he had shot two persons during the altercation giving rise to the charges against him, that does not mean that Judge Lang could not have considered all of the circumstances leading to Micelli's arrest, *see United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1968),

including factual matters which only related to the dismissed charges, *see United States v. Brown*, 428 F.2d 1191 (7th Cir.), *cert. denied*, 400 U.S. 941, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). *See also United States v. Sweig*, 454 F.2d 181, 184 (2d Cir. 1972) (sentencing judge may consider evidence of charges for which defendant was acquitted); *United States v. Cifarelli*, 401 F.2d 512, 514 (2d Cir.), *cert. denied*, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968) (proper to consider offenses for which defendant was neither tried nor convicted). In fact, in New York the presentence report, by statute, "must contain an analysis of as much of the information gathered in the investigation deems relevant to the question of sentence." CPL § 390.30(3) (McKinney 1971). Significantly, Micelli has not suggested in any of his papers that he did not actually shoot two persons on or about the date charged in the initial indictment.

Micelli's further contention that the *Lynn-Melton* preconditions for an appeal by a defendant who has pleaded guilty are constitutionally inadequate must also be rejected. In the first place, it is well established that the Appellate Division's decision to require literal compliance with the statutory requirements for filing a notice of appeal cannot be attacked on due process grounds in the absence of some showing that the failure to file resulted from ineffective assistance of counsel or improper conduct by the State. *See Daniels v. Allen, decided sub nom. Brown v. Allen*, 344 U.S. 443, 482–87, 73 S.Ct. 397, 97 L.Ed. 469 (1952); *United States ex rel. Brown v. Smith*, 306 F.2d 596, 605 (2d Cir. 1962). Here, no such showing has been made and, as a result, the only question which need be addressed is whether the additional burdens imposed upon defendants who plead guilty are defective on equal protection grounds. I find no such infirmity. As the New York Court of Appeals has previously observed, those who plead guilty to criminal charges evince "prima facie, an intention to forego appellate review" of their convictions. *People v. Melton*, 35 N.Y.2d at 329, 361 N.Y. S.2d at 880, 320 N.E.2d at 624. It is there-

fore hardly irrational to require that such defendants establish with greater certainty that they did indeed intend to pursue an appeal within the required time. The circumstances surrounding Micelli's application to this court underscore the need for such a requirement, for even if Micelli is given the benefit of the doubt regarding the reason that no notice of appeal was filed, he still has not offered any explanation for his failure to make any attempt to perfect his appeal within the required time period. *See* Rules of the Appellate Division § 600.11 (McKinney 1976). Dismissal of his appeal for failure to perfect would, moreover, not have given rise to any constitutional claim.

Micelli's application for a writ of habeas corpus is consequently denied.

SO ORDERED.